566 F.2d 446
 10 ERC 1961, 8 Envtl. L. Rep. 20,049
 VIRGINIA ELECTRIC AND POWER COMPANY, Appalachian Power
Company, Baltimore Gas and Electric Company, Carolina Power
& Light Company, Duke Power Company, Monongahela Power
Company, Potomac Edison Company, Potomac Electric Power
Company, South Carolina Electric & Gas Company, West Penn
Power Company, Indiana & Michigan Electric Company, Kentucky
Power Company, Ohio Power Company, Boston Edison Company,
Cincinnati Gas & Electric Company, Cleveland Electric
Illuminating Company, Columbus & Southern Ohio Electric
Company, Commonwealth Edison Company, Consolidated Edison
Company of New York, Inc., the Dayton Power and Light
Company, the Detroit Edison Company, Florida Power & Light
Company, Houston Lighting & Power Company, Illinois Power
Company, Long Island Lighting Company, Arkansas-Missouri
Power Company, Arkansas Power & Light Company, Mississippi
Power & Light Company, Louisiana Power & Light Company, New
Orleans Public Service, Inc., Middle South Utilities, Inc.,
Montaup Electric CoVSv.
Douglas M. COSTLE, as Administrator, Environmental
Protection Agency, and the United States
Environmental Protection Agency, Appellees.
 No. 76-2081.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 17, 1977.
Decided Nov. 11, 1977.
 
 George C. Freeman, Jr., Richmond, Va. (Henry V. Nickel, Michael B. Barr, Washington, D. C., Hunton & Williams, Richmond, Va., on brief), for appellants.
 James T. Harrington, Chicago, Ill., for U. S. Steel Corp.
 Thomas A. Larsen, Atty., Environmental Protection Agency, Washington, D. C., Sarah Chasis, New York City, for Natural Resources Defense Council, Inc.
 Peter R. Taft, Asst. Atty. Gen., Alfred T. Ghiorzi and Michael P. Carlton, Attys., Dept. of Justice, G. William Frick, Gen. Counsel, Washington, D. C., on brief, for Environmental Protection Agency and the Natural Resources Defense Council, Inc.
 Before HAYNSWORTH, Chief Judge, and WIDENER and HALL, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 This appeal and consolidated petitions for review concern regulations issued by the Administrator of the Environmental Protection Agency[1] implementing § 316(b)[2] of the Federal Water Pollution Control Act Amendments of 1972.[3] The sole question before us on appeal is whether review of those regulations lies within the original jurisdiction of the district court, or whether review is in the court of appeals under § 509(b)(1)[4] of the Act. We hold that, because review is in the court of appeals, the judgment of the district court dismissing the case for lack of subject matter jurisdiction is affirmed. In Nos.: 76-1474 and 76-2057, treated in an accompanying opinion, we deal with further threshold issues pertaining to the scope of EPA's § 316(b) regulations, and whether proper procedures were employed in their adoption.
 
 
 2
 Section 316(b) of the Act, 33 U.S.C. § 1326(b), requires that "(a)ny standard established pursuant to § 301[5] or § 306[6] of this Act and applicable to a point source[7] shall require that the location, design, construction, and capacity of cooling water intake structures reflect the best technology available for minimizing adverse environmental impact." (footnotes added). The regulations in question, 40 C.F.R. §§ 402.10-402.12, essentially provide, in determining whether the best available technology is employed in the manner required by § 316(b), that "(t)he information contained in the Development Document shall be considered."[8] 40 C.F.R. § 402.12.
 
 
 3
 Fifty-eight electric utility companies (the utilities) filed a timely petition in this court for review of the above regulations, in accordance with § 509(b) of the Act.[9] Upon consideration of the Development Document referred to in § 402.12, however, petitioners state they became convinced that jurisdiction properly resided in the district court. Accordingly, they filed a motion suggesting lack of jurisdiction in this court, and asked us to rule on our jurisdiction in advance of briefing on the merits. At the same time, petitions for review of the regulations were filed by the same utilities in the United States District Court for the Eastern District of Virginia. It is from the district court's dismissal for lack of jurisdiction that this appeal is taken.
 
 
 4
 A number of courts have already undertaken in some detail to chart a course through the rather complex, and often confusing,[10] language of the 1972 amendments to the Water Pollution Control Act. See, e. g., E. I. du Pont de Nemours & Co. v. Train, 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977); American Frozen Food Institute v. Train, 176 U.S.App.D.C. 105, 539 F.2d 107 (1976). We will attempt to limit our duplication of those efforts. The logical starting point for our inquiry is § 509(b)(1)(E), 33 U.S.C. § 1369(b) (1)(E), which provides that "(r)eview of the Administrator's action . . . (E) in approving or promulgating any effluent limitation or other limitation under section 301, 302, or 306" may be had in the United States Courts of Appeals. Since EPA relies on §§ 301 and 306, in addition to § 316(b), as authority for the challenged regulations,[11] the question at this point is whether the regulations constitute "effluent limitation(s) or other limitation(s)" within the meaning of § 509(b)(1)(E). See du Pont, supra, American Petroleum Institute v. Train, 526 F.2d 1343 (10th Cir. 1975).
 
 
 5
 No contention is raised that the § 316(b) regulations are themselves effluent limitations. It is obvious that they are not, for the statute defines "effluent limitation" as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters . . .." § 502(11).[12] The regulations involved here are concerned with structures used to withdraw water for cooling purposes, not with discharges of pollutants into the water. The question remains, thus, what are "other limitation(s)" under § 509(b)(1)(E), and do the questioned regulations fall within them.
 
 
 6
 The legislative history reveals that the phrase "other limitation" was adopted from the original House version of the Act. H. R. Rep. No. 92-911, 92d Cong., 2d Sess. (1972). It did not appear in the Senate bill. S-2770, Leg. Hist. Vol. 2, p. 1712. While no guidance is given as to the content of the phrase, we cannot assume that its inclusion was meaningless or inadvertent; other provisions from the same section relating to judicial review in the House bill do not appear in the statute as finally enacted.[13] The utilities' arguments against construing the § 316(b) regulations as "other limitation(s)" are twofold, and will be considered separately.
 
 
 7
 First, it is contended that the regulations are not actually limitations until, in the words of § 316(b), they are "standards established pursuant to section 301 or section 306 of this Act and applicable to a point source." The utilities claim that, while the regulations are presumptively applicable to individual point sources, the presumption may be rebutted, on a case-by-case basis, in § 402[14] permit proceedings. It is therefore argued that a limitation under § 301 or § 306 cannot be deemed applicable prior to its adoption in an individual permit proceeding.
 
 
 8
 The above reasoning in part proceeds from a premise that we think has been foreclosed by the Supreme Court's recent du Pont decision. The Court made clear that standards of performance for new point sources under § 306 are not merely presumptively applicable; rather, they are binding on the permit issuing authority. 430 U.S. at 137, 97 S.Ct. 965. Even with respect to limitations on existing point sources, however, for which variance procedures do exist,[15] the utilities' reasoning cannot, in our opinion, be reconciled with the du Pont decision. In that case, the Court considered effluent limitations for existing point sources issued under § 301, and standards of performance for new sources under § 306. The effluent limitations for existing point sources, though only presumptively applicable, were nevertheless held to be reviewable in the court of appeals under § 509(b)(1)(E). The challenged regulations in the present case were issued under §§ 301 and 306, as well as § 316(b), and though in part they may only be presumptively applicable, that does not distinguish them from the effluent limitations considered in du Pont for jurisdictional purposes.
 
 
 9
 Secondly, the utilities contend that the regulations do not constitute limitations in any sense, but are merely intended to provide guidance to the permit issuer. They point to the absence in 40 C.F.R. §§ 402.10-402.12 of specific numerical limitations or standards for individual point sources or classes of sources.
 
 
 10
 Notwithstanding that 40 C.F.R. § 402.12 does not impose specific structural or locational requirements upon cooling water intake structures, we find the utilities' argument unconvincing both as a matter of statutory construction and from the standpoint of policies influencing judicial review. In the first place, the regulation is mandatory in terms that it requires certain information to be considered in determining the best available technology for intake structures. This in itself is a limitation on point sources and permit issuers, for we construe that term as a restriction on the untrammeled discretion of the industry which was the condition prior to the passage of the statute. The same term, "restriction," we find in the statutory definition of effluent limitation, § 502(11). In American Iron and Steel Institute v. EPA, 543 F.2d 521 (3d Cir. 1976), the court held that it lacked jurisdiction to review net-gross regulations, which may permit a point source to discharge more pollutants than effluent limitations would otherwise allow, if there are pollutants in the intake water. The court noted that the regulations "neither prescribe specific number limitations for any pollutant, nor do they list the factors which must be considered in determining the control measures which individual point sources must employ." 543 F.2d at 527. In contrast, the § 316(b) regulations here do refer to information that must be considered in determining the type of intake structures that individual point sources may employ, and, by that token, they are limitations.
 
 
 11
 Moreover, § 316(b) itself seems to indicate its limitations are to be adopted under §§ 301 and 306. It states that, "any standard established pursuant to section 301 or 306 . . . shall require that the location, design, construction, and capacity of cooling water intake structures reflect the best technology available for minimizing adverse environmental impact." If a limitation other than an effluent limitation can exist under § 301 or § 306, which we must assume it can, we think a regulation implementing the requirements of § 316(b) must qualify as an "other limitation" within the meaning of § 509(b)(1)(E).
 
 
 12
 Finally, the regulations issued under § 316(b) are so closely related to the effluent limitations and new source standards of performance of §§ 301 and 306 that we think it would be anomalous to have their review bifurcated between different courts. Cf. du Pont, supra, at 136. It bears emphasis that § 316(b), which the regulations under consideration here implement, requires § 301 and § 306 standards to deal with cooling water intake structures. Just as this court[16] and the Supreme Court in du Pont indicated the lack of statutory justification for bifurcating review of new source and existing source standards under the Act, there is no convincing reason to do so here with respect to regulations issued at least in part under the same statutory sections, some of which limit intake structures, others, effluent discharges.[17] We think this result is consistent with the jurisdictional scheme of the Act, which in general leaves review of standards of nationwide applicability to the courts of appeals, thus furthering the aim of Congress to achieve nationally uniform standards. See American Frozen Foods, supra, at 118-121.
 
 
 13
 For these reasons, we conclude that jurisdiction to review these regulations properly lies in the court of appeals rather than the district court. The judgment of the district court is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Hereafter referred to as EPA
 
 
 [2]
 33 U.S.C. § 1326(b)
 
 
 [3]
 33 U.S.C. § 1251, et seq., which hereafter may be referred to as the Act or the statute
 
 
 [4]
 33 U.S.C. § 1369(b)(1)
 
 
 [5]
 Section 301, 33 U.S.C. § 1311, is entitled "Effluent Limitations." Subsection (a) provides that, except as in compliance with certain other enumerated sections of the Act, the discharge of any pollutant by any person shall be unlawful. Subsection (b) goes on to require the achievement of effluent limitations for existing point sources in two stages: a 1977 stage requiring application of the best practicable technology currently available, and a 1983 stage requiring application of a generally more stringent standard of the best available technology economically achievable
 
 
 [6]
 Section 306, 33 U.S.C. § 1316, basically deals with new point sources, those whose construction is commenced after regulations are published establishing standards of performance to which they must conform. The section directs the Administrator to publish within 90 days of enactment a list of categories of point sources that discharge pollutants, and within one year thereafter, to publish regulations establishing federal standards of performance for new sources within each category
 "Standard of performance" is defined by § 306(a)(1) as "a standard for the control of the discharge of pollutants which reflects the greatest degree of effluent reduction which the Administrator determines to be achievable through application of the best available technology . . .."
 
 
 [7]
 "Point Source" is defined by § 502(14), 33 U.S.C. § 1362(14), as "any discernible, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."
 
 
 [8]
 40 C.F.R. § 402.12 provides in full: "The information contained in the Development Document shall be considered in determining whether the location, design, construction and capacity of a cooling water intake structure of a point source subject to standards established under section 301 or 306 reflect the best technology available for minimizing adverse environmental impact." The remainder of the regulations, 40 C.F.R. §§ 402.10 and 402.11 contain a statement of scope and certain definitions
 The Development Document is a 263 page work issued by EPA entitled "Development Document for Best Technology Available for the Location, Design, Construction and Capacity of Cooling Water Intake Structures for Minimizing Adverse Environmental Impact." It largely consists of information of a technical nature, as the title suggests.
 
 
 [9]
 Section 509(b)(1), 33 U.S.C. § 1369(b)(1), requires petitions for review of § 301 and § 306 limitations to be filed within 90 days of approval or promulgation unless they are based upon grounds which arose after that time. This 90-day period has been construed as a statute of limitations, considering § 509(b)(1)(F), barring review after its expiration in Sun Enterprises, Ltd., v. Train, 532 F.2d 280 (2d Cir. 1976), and even jurisdictional, considering § 509(b)(1)(D), in Peabody Coal Co. v. Train, 518 F.2d 940 (6th Cir. 1975)
 
 
 [10]
 Indeed, the Act has been referred to as "poorly drafted and astonishingly imprecise." E. I. duPont de Nemours & Co. v. Train, 541 F.2d 1018 (4th Cir. 1976) (duPont II), aff'd in part, rev'd in part, 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977)
 
 
 [11]
 Prior to the Supreme Court's du Pont holding, much litigation, and a split in the circuits, had arisen over whether § 301 was an independent source of authority for the issuance of regulations establishing limitations on point sources. This was because the section states that certain effluent limitations "shall be achieved," but does not clearly state who is to issue them and at what stage in the proceedings. du Pont resolved the conflict in favor of EPA authority to issue generally applicable limitations by regulation under § 301. For a discussion of the pre-du Pont caselaw on the subject, see Hooker Chemicals & Plastics Corp. v. Train, 537 F.2d 620 (2d Cir. 1976)
 
 
 [12]
 33 U.S.C. § 1362(11)
 
 
 [13]
 For example, the original House version of § 509(b) provided for review in the district courts rather than the courts of appeals. See H. R. Rep. No. 92-911, 92d Cong., 2d Sess. (1972)
 
 
 [14]
 33 U.S.C. § 1342
 
 
 [15]
 See du Pont II, supra, note 10, at 1028
 
 
 [16]
 E. I. du Pont de Nemours & Co. v. Train, 528 F.2d 1136 (4th Cir. 1975) (du Pont I), aff'd, 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977)
 
 
 [17]
 In this respect, this case is to be distinguished from Bethlehem Steel Corp. v. EPA, 538 F.2d 513 (2d Cir. 1976), which held that state-imposed water quality standards under § 303, 33 U.S.C. § 1313, were not reviewable in the court of appeals as § 301 effluent limitations. The court emphasized the fundamental differences in the statutory scheme between effluent limitations and water quality standards, and noted that the regulations in question were not so closely tied to § 301 or § 306 that a division of review would be anomalous