**CHESAPEAKE BAY FOUNDATION, INC. and Citizens Against the Refinery's Effects, Inc., Plaintiffs,**

v.

**UNITED STATES et al., Defendants.**

**No. CA77–0376–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 28, 1978.

Patrick M. McSweeney, Richmond, Va., with Bruce J. Terris, Washington, D. C., Thomas B. Lewis, Staff Atty., Chesapeake Bay Foundation, Annapolis, Md., for plaintiffs.

Norman Olitsky, Gordon B. Tayloe, Jr., City Atty., Portsmouth, Va., for intervening defendants.

Eliot Norman, Asst. U. S. Atty., Richmond, Va., Steven Schatzow, EPA, Washington, D. C., Patrick J. Cafferty, Dept. of Justice, Washington, D. C., for defendants United States and Costle.

David E. Evans, Asst. Atty. Gen., Richmond, Va., for Virginia State Water Control Board.

Gerald L. Baliles, Richmond, Va., J. Michael Hines, Washington, D. C., for Hampton Roads Energy Co., Inc.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, Chesapeake Bay Foundation, Inc. and Citizens Against the Refinery's Effects, Inc., seek declaratory judgment, injunctive relief and mandamus with regard to a decision to issue a discharge permit for a proposed petroleum refinery to be located in Portsmouth, Virginia. Plaintiffs are nonprofit conservation organizations and oppose the issuance of a National Pollutant Discharge Elimination System (NPDES) permit to Hampton Roads Energy Company (Hampton Roads). Defendants are the Virginia State Water Control Board (State Board), the Environmental Protection Agency (EPA), the United States of America and Hampton Roads. The City of Portsmouth, Virginia and Hampton Roads Building and Construction Trades Council have intervened as party defendants in the instant litigation. The matter comes before the Court on defendants' and intervenors' motions to dismiss for lack of subject matter jurisdiction. Plaintiffs allege jurisdiction under 28 U.S.C. § 1331(a), 28 U.S.C. § 1361, 33 U.S.C. § 1251 and the doctrine of pendent jurisdiction. The issue, having been briefed and orally argued, is now ripe for disposition.

The facts in the instant case relating to the issue of jurisdiction are not in dispute. The record reflects that on October 19, 1976, Hampton Roads applied to the State Board for a permit to discharge waste from a proposed refinery to be built on the shores of the Elizabeth River in Portsmouth, Virginia. A copy of the application was forwarded to the EPA, Region III office and a public hearing was conducted by the State Board on December 9, 1976. On January 28, 1977, EPA advised the State that there would be no objection to the issuance of the proposed permit. Thereafter, on February 18, 1977, the State Board convened a second meeting and a modified permit was approved by the Board. On March 16, 1977, the plaintiffs petitioned the EPA to veto

Hampton Roads' permit and gave notice of their intention to file suit in the event the permit was not vetoed by the EPA. EPA notified plaintiffs that its position as expressed on January 28, 1977 to the effect that it did not object to the issuance of the permit remained unchanged. On June 30, 1977 the instant suit was filed. Plaintiffs allege four separate grounds for jurisdiction which the Court will address seriatim.

## The Act

The Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1251–1376, substantially revised the original Act which had been passed in 1948. The 1972 Amendments were designed to " . . .

restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The discharge permit system was established for the purpose of enforcing water control standards by regulating the introduction of pollutants into our Nation's waters *at the source.* The NPDES permit program, 33 U.S.C. § 1342, prohibits discharge of a pollutant without a permit. 33 U.S.C. § 1311(a). Our Congress initially vested EPA with the authority to implement this program, 33 U.S.C. § 1342(a). The Act also permits the states to regulate and administer the issuance of permits.[1] Indeed, as long as the state's program meets all the requirements of the Act, the EPA has no

1. Section 1342 reads as follows:
" . . .

#### State permit programs

(b) At any time after the promulgation of the guidelines required by subsection (h)(2) of section 1314 of this title, the Governor of each State desiring to administer its own permit program for discharges into navigable waters within its jurisdiction may submit to the Administrator a full and complete description of the program it proposes to establish and administer under State law or under an interstate compact. In addition, such State shall submit a statement from the attorney general (or the attorney for those State water pollution control agencies which have independent legal counsel), or from the chief legal officer in the case of an interstate agency, that the laws of such State, or the interstate compact, as the case may be, provide adequate authority to carry out the described program. The Administrator shall approve each such submitted program unless he determines that adequate authority does not exist.

(1) To issue permits which—

(A) apply, and insure compliance with, any applicable requirements of sections 1311, 1312, 1316, 1317, and 1343 of this title;

(B) are for fixed terms not exceeding five years; and

(C) can be terminated or modified for cause including, but not limited to, the following:

(i) violation of any condition of the permit;

(ii) obtaining a permit by misrepresentation, or failure to disclose fully all relevant facts;

(iii) change in any condition that requires either a temporary or permanent reduction or elimination of the permitted discharge;

(D) control the disposal of pollutants into wells;

(2)(A) To issue permits which apply, and insure compliance with, all applicable requirements of section 1318 of this title, or

(B) To inspect, monitor, enter, and require reports to at least the same extent as required in section 1318 of this title;

(3) To insure that the public, and any other State the waters of which may be affected, receive notice of each application for a permit and to provide an opportunity for public hearing before a ruling on each such application;

(4) To insure that the Administrator receives notice of each application (including a copy thereof) for a permit;

(5) To insure that any State (other than the permitting State), whose waters may be affected by the issuance of a permit may submit written recommendations to the permitting State (and the Administrator) with respect to any permit application and, if any part of such written recommendations are not accepted by the permitting State, that the permitting State will notify such affected State (and the Administrator) in writing of its failure to so accept such recommendations together with its reasons for so doing;

(6) To insure that no permit will be issued if, in the judgment of the Secretary of the Army acting through the Chief of Engineers, after consultation with the Secretary of the department in which the Coast Guard is operating, anchorage and navigation of any of the navigable waters would be substantially impaired thereby;

(7) To abate violations of the permit or the permit program, including civil and criminal penalties and other ways and means of enforcement;

(8) To insure that any permit for a discharge from a publicly owned treatment works includes conditions to require adequate notice to the permitting agency of (A) new introductions into such works of pollutants from any source which would be a new source as *defined in section 1316 of this title if such source were discharging pollutants,* (B) new

alternative but to approve the state program.[2] Additionally, the Act provides that if a state has submitted a satisfactory permit program, the EPA must suspend its own issuance of the permit program within ninety days.[3] *See* 33 U.S.C. § 1342(c). The EPA, nevertheless, retains authority to withdraw its approval of a state program and to veto individual permits issued under such programs. 33 U.S.C. § 1342(c). The United States Court of Appeals for the Fifth Circuit in commenting on this relationship stated, "The 1972 Amendments to the Federal Water Pollution Control Act join the Environmental Protection Agency and the fifty states in a delicate partnership charged with controlling and eventually eliminating water pollution throughout the United States." *Save the Bay, Inc. v. Administrator of EPA,* 556 F.2d 1282, 1284 (5th Cir. 1977).

## Jurisdiction

Plaintiffs have alleged four claims against EPA and the State Board in their

---

introductions of pollutants into such works from a source which would be subject to section 1311 of this title if it were discharging such pollutants, or (C) a substantial change in volume or character of pollutants being introduced into such works by a source introducing pollutants into such works at the time of issuance of the permit. Such notice shall include information on the quality and quantity of effluent to be introduced into such treatment works and any anticipated impact of such change in the quantity or quality of effluent to be discharged from such publicly owned treatment works; and

(9) To insure that any industrial user of any publicly owned treatment works will comply with sections 1284(b), 1317, and 1318 of this title.

Suspension of federal program upon submission of State program; withdrawal of approval of State Program

(c)(1) Not later than ninety days after the date on which a State has submitted a program (or revision thereof) pursuant to subsection (b) of this section, the Administrator shall suspend the issuance of permits under subsection (a) of this section as to those navigable waters subject to such program unless he determines that the State permit program does not meet the requirements of subsection (b) of this section or does not conform to the guidelines issued under section 1314(h)(2) of this title. If the Administrator so determines, he shall notify the State of any revisions or modifications necessary to conform to such requirements or guidelines.

(2) Any State permit program under this section shall at all times be in accordance with this section and guidelines promulgated pursuant to section 1314(h)(2) of this title.

(3) Whenever the Administrator determines after public hearing that a State is not administering a program approved under this section in accordance with requirements of this section, he shall so notify the State and, if appropriate corrective action is not taken within a reasonable time, not to exceed ninety days, the Administrator shall withdraw approval of such program. The Administrator shall not withdraw approval of any such program unless he shall first have notified the State, and made public, in writing, the reasons for such withdrawal.

Notification of Administrator

(d)(1) Each State shall transmit to the Administrator a copy of each permit application received by such State and provide notice to the Administrator of every action related to the consideration of such permit application, including each permit proposed to be issued by such State.

(2) No permit shall issue (A) *if* the Administrator within ninety days of the date of his notification under subsection (b)(5) of this section objects in writing to the issuance of such permit, or (B) *if* the Administrator within ninety days of the date of transmittal of the proposed permit by the State objects in writing to the issuance of such permit as being outside the guidelines and requirements of this chapter.

(3) The Administrator *may,* as to any permit application, waive paragraph (2) of this subsection.

Waiver of notification requirement

(e) In accordance with guidelines promulgated pursuant to subsection (h)(2) of section 1314 of this title, the Administrator is authorized to *waive* the requirements of subsection (d) of this section at the time he approves a program pursuant to subsection (b) of this section for any category (including any class, type or size within such category) of point sources within the State submitting such program." [Emphasis added]

For cases which discuss the legislative history of these sections *see Save the Bay, Inc. v. Administrator of EPA,* 556 F.2d 1282, 1285 (5th Cir. 1977); *Mianus River Preservation Committee v. EPA,* 541 F.2d 899 (2d Cir. 1976).

**2.** 33 U.S.C. § 1342(b). *Accord, Save the Bay, Inc. v. Administrator of EPA,* 556 F.2d 1282, 1285 (5th Cir. 1977).

**3.** EPA suspended its issuance of N.P.D.E.S. permits in Virginia in 1975 pursuant to a memorandum of understanding and the establishment of a state permit program by the State Board.

complaint. Although stated in various ways, all of those claims relate to the issuance of a NPDES permit to Hampton Roads by the State Board and the failure to object to that permit by EPA. Plaintiffs contend that the issuance of the permit was in error because: (1) there was no Environmental Impact Statement (EIS); (2) EPA and the State Board failed to perform certain duties under 33 U.S.C. §§ 1313 and 1314; (3) the State Board decision was not supported by substantial evidence; (4) certain state administrative procedures were not followed.

Plaintiffs first contend that subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331 in that they allege that this case involves federal questions. The first claim in the complaint alleges that an Environmental Impact Statement (EIS) was required by the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321. Plaintiffs argue that the failure of EPA or the State Board to issue an EIS before granting the permit is a federal· question. This Court agrees that a construction of NEPA is a federal question. This is precisely the type of issue that Congress envisioned federal courts would decide under NEPA.[4] This issue involves construction of a federal statute and a substantial federal question.[5] This Court must exercise jurisdiction to decide whether an EIS was required before the permit was issued to Hampton Roads.

Plaintiffs also contend that there is a federal question jurisdiction over claims 2–4 in their complaint. These claims relate to EPA's failure to object to the state issued permit to Hampton Roads. Plaintiffs allege in their complaint that the state permit does not meet the requirements of the FWPCA and that the EPA should have objected to the issuance of the permit to Hampton Roads. However, the statute is clear that EPA has discretion whether to object to a state issued permit. Indeed, EPA can waive its right to object to a state permit. *See* 33 U.S.C. § 1342(e). The Court is of the opinion that EPA's failure to object is an action not reviewable in the federal courts. This precise question was dealt with in *Save the Bay, Inc. v. EPA,* 556 F.2d 1282, 1284 (5th Cir. 1977) and *Mianus River Preservation Committee v. EPA,* 541 F.2d 899, 907 (2d Cir. 1976). Both of these cases held that the Courts of Appeal did not have jurisdiction over EPA's failure to object to a state NPDES permit.[6] It is the opinion of this Court that district court jurisdiction over this issue is also inappropriate. The rationale underlying the *Mianus* and *Save the Bay* decisions is that individual state permits are basically state matters. The EPA administrator is to set effluent limitations and approve or reject state programs in general. The right to object to an individual permit is totally discretionary and can be waived completely by the EPA. Since the right to object has been committed to agency review, there is no jurisdiction with regard to these issues.[7]

4. *Rucker v. Willis,* 358 F.Supp. 425 (E.D.N.C.) aff'd. 484 F.2d 158 (4th Cir. 1973); *Ely v. Velde,* 451 F.2d 1130 (4th Cir. 1971); *Kalur v. Resor,* 335 F.Supp. 1 (D.D.C.1971). Defendants argue that these cases are distinguishable in that they involved major federal action under NEPA while this case allegedly involves only state action. This argument fails to consider that a federal court must decide whether the actions here represent a major federal action under NEPA, thus requiring an EIS.

5. *Compare Mahelona v. Hawaiian Electric Power Company,* 418 F.Supp. 1328, 1332 note 6 (D.Haw.1976) with *Molokai Homesteaders Coop. Ass'n v. Morton,* 506 F.2d 572, 580 (9th Cir. 1974).

6. Courts have stated that EPA has discretion not to object to a state permit despite the fact that the permit violates the FWPCA. *Save the*

*Bay, Inc. v. EPA,* 556 F.2d 1282, 1284 (5th Cir. 1977); *Mianus River Preservation Committee v. EPA,* 541 F.2d 899, 907 (2d Cir. 1976).

7. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Greater New York Hospital Association v. Mathews,* 536 F.2d 494 (2d Cir. 1976). The Court in *Save the Bay* in *dicta* noted two situations where *possible* district court jurisdiction could exist when EPA refuses to object to a state issued permit. *Id.* at 1292–1296. Neither of these possible grounds for jurisdiction is present in this case.

The fact that EPA's right to object is committed to agency discretion is not inconsistent with the Court taking jurisdiction over the EIS question. Whether the requirements of NEPA are met depends on whether the proper procedures to exercise discretion are met. *Save Our*

■ Additionally, plaintiffs allege in their second claim that the state program in general and EPA's approval of that program are improper since maximum daily loads of water quality have not been established in time and that the state had not established priority rankings pursuant to 33 U.S.C. § 1313(d)(1)(A). Exclusive jurisdiction over EPA's approval of a state permit program vests in the United States Court of Appeals. Section 1369(b)(1) and (2) of the Act permit the Court of Appeals exclusive review of EPA's action with reference to a state permit program in general and effluent limitations pursuant to §§ 1311, 1312 and 1316 of the Act.[8] Although plaintiffs' second claim involves alleged violations of Section 1313, the claim is inextricably bound with Section 1311 limitations and review is proper in the Court of Appeals if any *federal* court. *American Paper Institute v. Train,* 177 U.S.App.D.C. 181, 189–190, 543 F.2d 328, 336–37 (1976). *See generally, E. I. Dupont de Nemours & Co. v. Train,* 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977); *Virginia Electric and Power Co. v. Costle,* 566 F.2d 446 (4th Cir. 1977). Plaintiffs also allege that these violations require withdrawal of the entire state permit program and that issue is suitable only for review in the Court of Appeals. Plaintiffs assert that the savings provision of 33 U.S.C. § 1365[9] preserves district court jurisdiction but it is to be noted that that particular provision applies solely to § 1365. Section 1369 of the Act specifically states that certain questions only be reviewed in the Court of Appeals.

■ Plaintiffs allege additionally that there is federal jurisdiction over EPA's failure to object to the state permit in question here pursuant to 28 U.S.C. § 1361 and the Citizen's Suit provision of the Federal Water Pollution Control Act.[10] The flaw in

---

*Sound Fisheries Ass'n v. Callaway,* 387 F.Supp. 292, 297 (D.R.I.1974).

8. Section 1369(b)(1) & (2) reads as follows:
(b)(1) Review of the Administrator's action (A) in promulgating any standard of performance under Section 1316 of this title, (B) in making any determination pursuant to section 1316(b)(1)(C) of this title, (C) in promulgating any effluent standard, prohibition or pretreatment standard under section 1317 of this title, (D) *in making any determination as to a State permit program submitted under section 1342(b) of this title,* (E) *in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, or 1316 of this title,* and (F) in issuing or denying any permit under section 1342 of this title, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. Any such application shall be made within ninety days from the date of such determination, approval, promulgation issuance or denial, or after such date only if such application is based solely on grounds which arose after such ninetieth day.
(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) of this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement.

9. 33 U.S.C. § 1365 reads as follows:

Statutory or common law rights not restricted
(e) nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

10. 33 U.S.C. § 1365 reads as follows:
Citizen suits—Authorization; jurisdiction
(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.
The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

such assertions is that both of the cited provisions involve nondiscretionary duties. As the Court has previously pointed out, EPA by statute retains discretion to object to a specific state NPDES permit and that right of the EPA may be waived. The Citizen's Suit provision, by its terms, applies only to nondiscretionary duties. Similarly, the discretionary nature of EPA's authority to object to a specific permit negates mandamus jurisdiction. *Short v. Murphy,* 512 F.2d 374 (6th Cir. 1975); *Craig v. Colburn,* 414 F.Supp. 185 (D.Kan.1976); *International Federation Professional and Technical Engineers, Local No. 1 v. Williams,* 389 F.Supp. 287, 290 (E.D.Va.1974) *affirmed* 510 F.2d 966 (4th Cir. 1975). Plaintiffs are correct in their assertion that mandamus jurisdiction under § 1365 is proper as to the issue of whether an EIS is required by NEPA, since such a procedure, if required, is mandatory and not discretionary.

Finally, plaintiffs seek the Court's discretion to exercise pendente lite jurisdiction over various claims asserted. This doctrine permits non-federal claims to be tried with federal claims. In the instant suit while there exists jurisdiction over the NEPA claims of plaintiffs as distinguished from EPA's failure to object to effluent standards, the Court is of the view that there is no rational basis to exercise pendent jurisdiction over non-federal matters. There is, in short, no jurisdiction in this Court to review EPA's decision not to object to the state issued permit to Hampton Roads other than to determine whether an EIS was required.

### Conclusion

For the reasons previously stated, this Court will exercise jurisdiction in this case only to decide the narrow issue of whether NEPA requires EPA or the Board to issue an EIS. There is no jurisdiction in the federal district court over claims II through IV of plaintiffs' complaint regarding EPA's failure to object to this individual permit and withdrawal of the entire state permit program.

An appropriate order will issue.