**DEFENDERS OF WILDLIFE, Plaintiff,**

v.

**Cecil D. ANDRUS, Secretary of the Interior, et al., Defendants.**

**Civ. A. No. 76–1443.**

United States District Court,
District of Columbia.

March 11, 1977.

Bruce J. Terris, Helen Cohn Needham, Washington, D. C., for plaintiff.

Irwin L. Schroeder, Dept. of Justice, Washington, D. C., for Cecil D. Andrus, Secretary of the Interior, and Lynn A. Greenwalt, Director, U.S. Fish and Wildlife Service.

Paul A. Lenzini, Charles S. Fax, Washington, D. C., for International Association of Fish and Wildlife Agencies.

## MEMORANDUM OPINION

GESELL, District Judge.

Plaintiff claims that regulations of the Department of the Interior governing the hours during which sport hunting of migratory game birds may occur violate a number of treaties, the Migratory Bird Treaty Act, 16 U.S.C. § 704, the Endangered Species Act of 1973, 16 U.S.C. §§ 1531, *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 706. The parties have filed cross-motions for summary judgment and the issues have been briefed and argued.

Pursuant to the Migratory Bird Treaty Act, the Fish and Wildlife Service, acting for the Secretary of the Interior, annually issues regulations setting the conditions under which certain migratory birds may be hunted. 16 U.S.C. § 704. Among the conditions imposed are the hours during the day when game shooting is permitted. For some years now the Service has permitted shooting from one-half hour before sunrise until sunset. *See* 50 CFR 20, as amended. It permitted game shooting of certain species during these hours for the 1976–77 hunting season, and it is this decision that is under immediate attack here.

Under the Migratory Bird Treaty Act the Secretary must implement the migratory bird treaties and has determined that his regulations should "limit the taking of protected species where there is a reasonable possibility of hunter identification error between game and protected species." 41 Fed.Reg. 9177 (1973). In addition, the Endangered Species Act of 1973 prohibits the hunting of endangered species, 16 U.S.C. § 1538(a)(1)(B), and requires the Secretary of the Interior to act to ensure the conservation of protected species.

Shooting of endangered species during the hunting hours is prohibited. Plaintiff contends, however, that the shooting hour regulations violate the Secretary's duties under the above acts, submitting numerous well-prepared affidavits indicating that be-

cause visibility is low one-half hour before sunrise and one-half hour before sunset, protected species cannot be readily distinguished from game species. Thus they assert that regulations which allow shooting at these times do not protect threatened and endangered species as required by law. The defendants have countered with some affidavits indicating that visibility during the contested hours is not so impaired that misidentification is likely to occur and that, in any case, such hours are required to provide adequate opportunities for game hunters.[1]

This action challenges an administrative decision made under the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553. The scope of review is set by that Act, 5 U.S.C. § 706, and it is therefore necessary to examine the record of the agency proceedings on which the challenged regulation is based. In so doing it appears that when proposed regulations were published permitting shooting from one-half hour before sunrise until sunset, 41 Fed.Reg. 9177–82 (1973), plaintiff and other organizations and individuals protested, raising the issue of hunter misidentification of protected species. Neither plaintiff nor defendants presented any data which would indicate how many misidentifications occur during the contested hours compared with those that occur during full daylight. The administrative record contained no studies of the effects on protected species of early morning and late afternoon shooting, nor studies on the amount of light necessary to make the identifications needed to distinguish between species. The administrative record is virtually barren of any information regarding the impact of the contested shooting hours on birds that should not be taken.[2]

The Fish and Wildlife Service contends that it was not required to carry out any such studies or to create a more complete administrative record. Its position is that the Endangered Species Act only requires that the regulations "do not jeopardize the continued existence of these [protected] species." Based on evidence that the most important factor affecting the population of a given species is the quality of its habitat, the Service concluded that it was unlikely that a minor alteration in shooting hours would jeopardize a species.[3]

The Service has misinterpreted the Endangered Species Act of 1973. The Act requires that

> Whenever any species is listed as a threatened species pursuant to subsection (c) of this section, the Secretary shall issue such regulations as he deems necessary and advisable to provide for the conservation of such species. 16 U.S.C. § 1533(d).

It also provides that:

> The Secretary shall review other programs administered by him and utilize such programs in furtherance of the purposes of this chapter. 16 U.S.C. § 1536.

A major purpose of the Act is the "conservation" of endangered and threatened species, 16 U.S.C. § 1531, and "conservation" is strictly defined as:

> . . . the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary. 16 U.S.C. § 1532.

---

1. This position is supported by intervening defendant International Association of Fish and Wildlife Agencies.

2. Several internal agency memoranda were prepared evaluating the shooting hours in light of the Endangered Species Act. Plaintiff contends that the last of these is not properly part of the administrative record. This issue need not be decided for these internal memoranda are clearly insufficient to support the agency' decision.

3. The Fish and Wildlife Service has made other, most commendable efforts to protect threatened or endangered species. For example, it has on occasion stopped or curtailed certain types of hunting when it gathered information that a threat had been created to the existence of endangered species. It also has helped improve habitat conditions and sought to acquaint hunters with the markings of birds subject to protection.

It is clear from the face of the statute that the Fish and Wildlife Service, as part of Interior, must do far more than merely avoid the elimination of protected species. It must bring these species back from the brink so that they may be removed from the protected class, and it must use all methods necessary to do so. The Service cannot limit its focus to what it considers the most important management tool available to it, *i. e.*, habitat control, to accomplish this end.

It is also clear from the legislative history that Congress considered hunting regulations among the more important weapons in the fight to save vanishing species of wildlife since the Senate Report on the legislation contained the explicit finding that:

> The two major causes of extinction are hunting and destruction of the natural habitat. S.Rep. No. 93–307, 93d Cong., 1st Sess. 2 (1973), U.S.Code Cong. & Admin.News 1973, pp. 2989, 2990.

█ Under the Endangered Species Act of 1973, the agency has an affirmative duty to increase the population of protected species. The regulations permitting twilight shooting of game birds undoubtedly occasions some killing of protected species. The rulemaking proceedings did not concern themselves with the amount, extent or nature of such killing and, especially since plaintiff by its affidavits presents a substantial argument that the destruction of protected species may be considerable, it is apparent that the rulemaking process was not adequately focused upon the obligation of the Fish and Wildlife Service to conserve and increase the population of these species. In this sense, then, the regulations must be said to be arbitrary.

At this stage, however, this question is somewhat academic. The 1976–77 hunting season is over and the agency has now commenced processing comparable proposed regulations for the coming hunting season. The Fish and Wildlife Service recently has indicated, in papers filed with the Court, that some useful computerized data may exist which will more precisely indicate the impact of twilight shooting upon the populations of protected species. In the course of the present regulatory proceeding this and other relevant data must be made forthcoming and subjected to critical analysis. This is not to say that twilight shooting must be prohibited if protected species are subject to any killing by inadvertent action of hunters or otherwise. But there must be evidence in the record that hunting hours under the new regulations are so fixed that such killing is kept to the minimum consistent with other obligations imposed on the Service by Congress. In short, the development of the regulations should more sharply focus on the problem of twilight shooting, and plaintiff's objections must be carefully considered and weighed on the record.

Accordingly, declaratory judgment is issued on behalf of plaintiff to the effect that the regulations for the 1976–77 hunting season were arbitrary and unlawful and defendant is directed to proceed with the current rulemaking proceedings in accordance with its statutory obligations as set forth above. A Declaration and Order are filed herewith.