Chester CONNOR et al., Plaintiffs,

v.

Cecil D. ANDRUS, Secretary of the Interior, et al., Defendants.

Civ. A. No. EP–77–CA–187.

United States District Court,
W. D. Texas,
El Paso Division.

June 7, 1978.

Bruce J. Ponder, El Paso, Tex., for plaintiffs.

Jamie C. Boyd, U.S. Atty., San Antonio, Tex., Irwin L. Schroeder, David C. Cannon, Jr., U.S. Dept. of Justice, Washington, D.C., for defendants, Cecil Andrus, Secretary of the Interior, the U.S. Fish and Wildlife Service, Lynn A. Greenwalt, Director of the U.S. Fish & Wildlife Service.

John L. Hill, Atty. Gen. of Tex. by W. Thomas Buckle, Asst. Atty. Gen., Austin, Tex., for defendants, Texas Department of Parks & Wildlife and Henry Burkett, Director of the Texas Department of Parks and Wildlife.

## MEMORANDUM OPINION

JOHN H. WOOD, Jr., District Judge.

This is a suit to have particular regulations of the U.S. Fish and Wildlife Service of the Department of the Interior and the Texas Department of Parks and Wildlife declared invalid and to enjoin the enforcement of those regulations. Plaintiffs sought a preliminary injunction, alleging that the regulations would cause them irreparable harm if the individual defendants were not immediately enjoined from enforcement of the regulations. An evidentiary hearing was held, during which the parties submitted affidavits and testimony and the Court heard arguments from all its parties. Additionally, the parties submitted memoranda of law in support of their positions. Based on the evidence and the administrative record, the Court issued a preliminary injunction enjoining the Federal defendants from the enforcement of the hunting regulations and ordering them to promulgate new regulations consistent with that order. The order further decreed that the State defendant, HENRY BURKETT, Director of Texas Department of Parks and Wildlife, reconsider the Texas Parks and

Wildlife regulations closing duck hunting in West Texas and report back to the Court with his findings. Subsequently, plaintiffs filed their motion for summary judgment, requesting a final declaration of rights under the Endangered Species Act and final judgment. Their motion was granted and this Court files this Memorandum Opinion with its Declaration and Order in support of that order.

The Federal regulations which are challenged in this litigation were promulgated by the U.S. Fish and Wildlife Service pursuant to the Endangered Species Act of 1973, 16 U.S.C. §§ 1531, et seq. The regulations were a part of the annual migratory waterfowl hunting season frameworks which the Service issues pursuant to the notice and comment provisions of the Administrative Procedure Act. 5 U.S.C. § 553. The initial proposed regulations were originally published in the Federal Register on March 10, 1977. See 42 F.R. 13311. On August 15, 1977, the final draft of the proposed regulations was published in the Federal Register, setting forth the proposed framework for season lengths, shooting hours, bag and possession limits and outside dates within which states could select seasons for hunting birds and other matter. See 42 F.R. 41145. On page 41149 under the heading of "Compliance with Section 7 of the Endangered Species Act of 1973", the Fish and Wildlife Service set forth facts to show that the Secretary of the Interior was complying with the requirements of Section 7. Section 7 of the act is found at 16 U.S.C. § 1536. Under the section the Secretary is required to review programs administered by him and utilize those programs in the furtherance of the purposes of the Endangered Species Act and to take such action as is necessary to insure the actions authorized, funded or carried out do not jeopardize the continued existence of endangered or threatened species or result in the destruction or in modification of habitat of the species. Among those listed as endangered was the Mexican duck (Anas diazi). It was announced that the proposed late season frameworks, which includes the duck season in Texas, New Mexico, and Arizona

were being evaluated as to possible impacts upon the Mexican duck and that consultations within the Department of the Office of Endangered Species and the Office of Migratory Bird Management were then underway. It was further stated that findings from the consultation might cause modification of some of the regulatory measures which had been proposed, and that any modifications would be reflected in the final rule making which was to appear on or about August 30th, 1977.

On September 9, 1977, the final regulations setting late season framework appeared in the Federal Register. See 42 F.R. 45310. The effective date was the date of publication. The final regulations were substantially the same as the proposed frameworks which were published before except that it was ordered that "in order to provide greater protection to the endangered Mexican duck, all duck hunting is prohibited in designated portions of New Mexico and Texas." Also affected was a small area in Western Arizona.

The regulations stated that a biological opinion was issued on August 22, 1977, on species including the Mexican duck and the opinion concluded that the proposed regulations were unlikely to jeopardize the continued existence of the Mexican duck or destroy or adversely modify critical habitats. See 42 F.R. 45313. Nonetheless the Fish and Wildlife Service concluded that in order to insure the programs administered by the Service are used to further the purpose of the Endangered Species Act of 1973, it intended to prohibit the hunting of ducks in the described areas. Pursuant to the requirement that its regulations conform to the frameworks for the Fish and Wildlife Service, the Texas Department of Parks and Wildlife amended its regulations to close the season for duck hunting in the affected areas of Texas. The New Mexico Department of Game and Fish took no action to conform its regulations to the federal regulations.

The plaintiffs attack the regulations on the basis that they are arbitrary and capricious. They argue that the admin-

istrative record and other evidence provide no rational factual basis for the regulation closing duck season in the affected areas. The plaintiffs have recognized that the burden is upon them to show the arbitrary and capricious nature of the Fish and Wildlife

Services' regulations. *Sterling-Davis Dairy v. Freeman*, 253 F.Supp. 80 (D.N.J.—1965). This Court concurred with the plaintiffs' assertion on this point and issued the preliminary injunction and with its order filed findings of fact and conclusions of law.[1] In

I. The findings of fact which support the Court's order are the following:

1. The Mexican duck (*Anas diazi*) in the United States has been declared to be an endangered species by the U.S. Fish and Wildlife Service pursuant to the Endangered Species Act of 1969 (now the Endangered Species Act of 1973).

2. Limited available evidence indicates that the population of Mexican and Mexican-like ducks has suffered no adverse effects from over 75 years of waterfowl hunting in the United States.

3. On September 9, 1977, the U.S. Fish and Wildlife Service closed the season on duck hunting in the following locations: ·

That portion of New Mexico lying south and west of the boundary described as follows:

Interstate Highway 10 from the Arizona-New Mexico border east to Deming, north on U.S. Highway 180 to State Highway 26, east on State Highway 26 to Interstate Highway 25, south on Interstate Highway 25 to Las Cruces, and south on Interstate Highway 10 to the New Mexico-Texas border.

Also, the Tula Rosa Creek Area defined as beginning where State Highway 12 crosses the Continental Divide, and extending westward along State Highway 12 to Apache, and encompassing the area one mile south of the above boundary all in Catron County.

That portion of Texas lying west and south of the boundary described as follows:

Interstate Highway 10 from the Texas-New Mexico border south and east to Fort Stockton, U.S. Highway 385 from Fort Stockton south to the boundary of Big Bend National Park, and southwesterly along the west boundary of the Big Bend National Park to the U.S.-Mexico border along the Rio Grande. That portion of Arizona located in Cochise County.

4. Pursuant to proclamation No. 34, the Texas Department of Parks and Wildlife closed duck hunting in the following locations in west Texas:

Trans-Pecos Area: Closed season: The season shall be closed to all duck hunting in that portion of west Texas and south of the boundary described as follows: Interstate Highway 10 from the Texas-New Mexico Boundary, south and east to Fort Stockton; U.S. Highway 385 from Fort Stockton south to the boundary of the Big Bend National Park, and southwesterly along the west boundary of the Big Bend National Park to the U.S.-Mexico border along the Rio Grande;

5. The Trans-Pecos area is a part of the High Plains Mallard Management Unit in which the Texas Department of Parks and Wildlife has opened duck season (except for the Trans-Pecos Area) from November 1, 1977 through January 22, 1978.

6. The final regulations of the U.S. Fish and Wildlife Service setting season frameworks provided that states could open duck season and allow duck hunting (except in the closed area) between October 1, 1977 and January 23, 1977.

7. This closure of duck hunting by the defendants is the first such closure of duck hunting ever in the area affected.

8. The hunting pressures in the area closed to duck hunting is light.

9. The original proposed shooting frameworks of the U.S. Fish and Wildlife Service dated March 10, 1977, in the opinion of defendant LYNN GREENWALT, would not jeopardize the continued existence of the Mexican duck or destroy or adversely modify habitats that may in the future be determined to be critical to the Mexican duck.

10. The uncontroverted facts show that the two threats to the integrity of the species in the United States are the long term hybridization with the mallard duck (*Anas platyrynchos*) and the destruction of the natural habitat of the Mexican duck through canalization of the river areas and agriculture.

11. Hybridization of species is a natural process of evolution through interbreeding;

12. There are four recognized criteria for determining if a particular classification of animal is a separate species or a part of a species and those four criteria are as follows:

a) They have a common genetic pool;

b) They interbreed within the genetic pool;

c) They produce viable offspring (i. e., offspring capable of reproducing); and

d) They are genetically isolated from any other species (i. e., they cannot interbreed with any other species).

13. The orders by the U.S. Fish and Wildlife Service and Texas Department of Parks and Wildlife closing duck hunting has let to the destruction of habitat of Mexican and Mexican-like duck along the Rio Grande because individuals who would preserve the habitat for hunting are converting the marshy areas along the river into farmland.

14. The closure of hunting in the area will not prevent hybridization or prevent further destruction of the bird's natural habitat.

15. The only probable source of hunter misidentification is the mallard hen.

reaching its decision the Court recognizes that the Secretary of the Interior has an affirmative duty under the Endangered Species Act to bring endangered species to the point at which they may be removed from protected status. *Defenders of Wildlife v. Andrus*, 428 F.Supp. 167 (D.C.D. 1977). But such a duty is not met by promulgating regulations which do not attack the cause or causes of population depletion of a species. This is particularly a problem where other interests, such as those of the plaintiffs in this suit, are adversely affected. The need to show a rational basis for a regulation obviously becomes even more important.

The defendants have cited that portion of the Senate Report on the Endangered Species Act which contained the following finding:

> The two major causes of extinction are hunting and destruction of the natural habitat. S.Rep.No.93–307, 93d Cong., 1st Sess. 2 (1973); U.S.Code Cong. & Admin. News 1973, pp. 2989, 2990.

■ Clearly the record and the evidence in this case demonstrate that the Mexican duck is threatened by the destruction of its natural habitat. Additionally, it shows that the other danger is hybridization with the mallard. However, the record is filled to abundance with data to show that hunting presents no threats to the Mexican duck. The defendants' reliance upon a general finding of a congressional inquiry is not well founded when compared to the specifics of the record presented here.

Even the caveat in *Defenders of Wildlife v. Andrus* that the Secretary has a duty under the Act to increase the population of endangered species does not justify the hunting ban in this case. 428 F.Supp. at 170. The record does not support a finding that banning hunting of all ducks will increase or even tend to increase the Mexican duck population. Evidence adduced at the hearing on the preliminary injunction in fact indicates that the hunting ban could have an adverse affect on the Mexican duck population through destruction of critical habitat of the duck.[2]

■ This Court will not lightly consider its duty under the Administrative Procedure Act to weigh the validity of administrative rules. It recognizes that the Fish and Wildlife Service has expertise in this area but in reviewing the regulations, judicial deference to expertise is not boundless and expertise is not sufficient in itself to sustain a decision. *United States v. United States*, 417 F.Supp. 851 (D.D.C.—1976) affirmed, 430 U.S. 961, 97 S.Ct. 1638, 52 L.Ed.2d 352 (1977). This Court finds that the rules herein challenged were not based on all the relevant factors which the Fish and Wildlife Service should have considered and this is a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).[3] The Court can find no rational

---

16. The entire range of population of the Mexican duck is from southern Mexico (on the south) to its tip in the southwestern United States (on the north).

17. The Mexican duck is found in abundance in Mexico, with estimates of population from 20,000 to 40,000 birds.

18. There are approximately 300 Mexican and Mexican-like ducks in the U.S.A. in the area in which hunting is closed and these birds represent the north end of the entire range of population.

19. Dr. John Hubbard, of the New Mexico Game and Fish Department, has concluded in his book, *The Biological and Taxonomic Status of the Mexican Duck*, that the Mexican duck and Mexican-like duck in the U.S.A. should be regarded as a subspecies of the mallard (*Anas platyrynchos diazi*).

20. There is a substantial loss to the public interest and the public interest is disserved by the closure of duck hunting in areas affected, by the deprivation of recreational activities and the destruction of vital habitat for waterfowl including the Mexican and Mexican-like duck.

2. Dr. Albert G. Canaris, a professor of biology at the University of Texas at El Paso, a specialist in migratory waterfowl, and an observer of these birds in the Rio Grande southwest testified that he had observed some areas of habitat of the Mexican duck destroyed after the announcement by the Fish and Wildlife Service of the duck hunting closure.

3. The Fish and Wildlife Service failed to follow the advice and recommendations of its own regional experts in making the regulations. The administrative record in this case docu-

basis for the decision of the agency and cannot sustain it. *Sabin v. Butz*, 515 F.2d 1061, 1067 (10th Cir.—1975).

Based on these reasons, declaratory judgment is issued in the plaintiffs' favor and the Fish and Wildlife Service shall proceed with current and future rulemaking proceedings bearing in mind the findings of this Court and should focus attention on affirmative means of restoring the Mexican duck including limitations on hybridization, if possible, and the preservation of critical habitat. This does not mean that duck hunting can never be banned but rather it means that greater justification must be found than can be gleaned from this record.

A Declaration and Order are filed herewith.

ments that hybridization with the mallard and destruction of habitat as the principal threats to the species. It points out the fact that the Mexican duck thrives in the Republic of Mexico and the paucity of Mexican ducks in the United States is the result of a political boundary crossing the northern tip of the range of the Mexican duck population. See *The Biological and Taxonomic Status of the Mexican Duck*, by Dr. John Hubbard, Bulletin No. 16, New Mexico Department of Game and Fish, 1977. The record also indicates no negative impact from hunting. See footnote 1.