**STATE OF ALASKA and Mauneluk Association, Plaintiffs,**

v.

**Cecil D. ANDRUS, Secretary of the Interior, Defendant,**

**and**

**Defenders of Wildlife et al., Defendant-Intervenors.**

**Civ. No. A77–51.**

United States District Court, D. Alaska.

April 11, 1977.

Atty. Gen. Avrum Gross by Asst. Attys. Gen. William T. Council, Geoffrey Haynes, Juneau, Alaska, for State of Alaska.

G. Kent Edwards, U. S. Atty. for Alaska, Anchorage, Alaska, Dan A. Hensley, Asst. Regional Sol., Anchorage Region, U. S. Dept. of Interior, Anchorage, Alaska, for Secretary of the Interior.

Hugh W. Fleischer, Rice, Hoppner & Hedland, Anchorage, Alaska, Karin P. Sheldon, Roisman, Kessler & Cashdan, Washington, D.C., for defendant-intervenors.

Nana Regional Corp., Inc., by Joseph Rudd, Ely, Guess & Rudd, Anchorage, Alaska, for amicus curiae.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on plaintiffs' motion for summary judgment and motion to dismiss, and intervenors' motion for summary judgment and motion to change venue. This case closely parallels another case presently proceeding in the District Court for the District of Columbia, No. 77–0212 Civil, and a recitation of the facts and posture of that case are necessary for a full understanding of the issues raised herein. It is perhaps unfortunate that the critical and unique issues of this case require this court to comment on and evaluate the decision of my brother judge in the District of Columbia. However, as was that court at the time some of these issues were before it, this court now is called upon to rule as it finds necessary under the facts and law of this litigation.

*The Proceedings*

The underlying dispute in both cases relates to the State's program to kill wolves in certain regions of the Western Arctic. The program is an effort by the Alaska Department of Fish and Game to help protect the Western Arctic caribou herd which allegedly is being ravaged by wolf predation. In addition to its intrinsic worth as a valuable part of the ecosystem of the area the caribou herd traditionally provides a substantial portion of the animal harvest for the area's Native population. This subsistence hunting has been sharply curtailed by the State in conjunction with its aerial wolf hunt program in an effort to re-establish the caribou herd. The entire area on which the wolf hunt program was to take place is federally controlled land.

Intervenors in the present action (hereinafter NRDC) brought suit in the District Court for the District of Columbia against the Secretary of the Interior, defendant herein. The State of Alaska is not a party in that case. In that case NRDC contended that under certain provisions of federal law the Secretary had the power to halt or control the wolf kill program. It then apparently maintained that prior to acquiescing to the program the Secretary was required to file an environmental impact statement under the National Environmental Protection Act, 42 U.S.C. § 4321 *et seq.*, (NEPA). NRDC then moved for a preliminary injunction in that case and was successful in that motion. The District Court

for the District of Columbia issued an injunction essentially requiring the Secretary to order the State to cease its wolf kill program. As the State of Alaska was not a party to that action the injunction was not directed specifically to it. The Secretary obeyed the injunction and sent a telegram to the Governor of Alaska ordering him to halt the program. The State complied with that order.

Following the issuance of the preliminary injunction in the Washington, D.C., case the State filed the present action. Its complaint requested this court *inter alia* to declare that the Secretary's order to the State is in violation of the Alaska Statehood Act, 48 U.S.C. Chap. (2), section 6(e). The State has moved to dismiss the remainder of the counts stated in the complaint and that motion is well taken. Local Rule 5(B)(4), Fed.R.Civ.Proc. 41(a)(1)(i).

The State further requested the court to issue a preliminary injunction commanding the Secretary to withdraw his order to the State. Following a hearing the court declined to issue such an injunction. Although the court at that time agreed with the merits of the State's motion it determined as a matter of judicial comity that it should decline to issue an injunction which would place a party under directly conflicting court ordered mandatory duties. Cf. *M/V Theresa Ann v. Kreps*, 9th Cir. 1977, 548 F.2d 1382. By this motion for summary judgment on the action for declaratory relief the State has sought to avoid the difficulty which presented itself in the request for injunctive relief.

The issues presented by the State's motion and intervenors' cross motion for summary judgment are these: (1) Whether the BLM Organic Act, 43 U.S.C. § 1701 *et seq.*, Pub.L. 94–579, vests the Secretary of the Interior with the authority to halt the wolf kill program; (2) If so, whether a decision of the Secretary to allow the State to conduct its wolf kill program on federal lands is a major federal action significantly affecting the quality of the human environment which requires the preparation of an environmental impact statement pursuant

to NEPA; and (3) Whether the State should be enjoined from conducting the wolf hunt pending final disposition of the Washington, D.C. case?

Initially the court notes that there is an actual controversy involving the actions of an agency of the federal government. Accordingly, jurisdiction is proper under 28 U.S.C. § 1331(a), and declaratory relief is an appropriate remedy. 28 U.S.C. §§ 2201–2202.

### The "BLM Organic Act" and Alaska Statehood Act

■ The first issues which must be considered are the Secretary's authority to halt the wolf kill under the "BLM Organic Act," 43 U.S.C. § 1701, *et seq.*, Pub.L. 94–579, and the State's authority over hunting and fishing pursuant to the Alaska Statehood Act, 48 U.S.C. Chapter 2, section 6(e). In its memorandum on the motion for a preliminary injunction the court indicated that it felt that the Secretary lacked the power to halt the wolf hunt program. Upon a review of the authorities, however, the court now holds that the Secretary does have such power.

The BLM Organic Act provides that the Secretary of the Interior "shall manage the public lands under principles of multiple use and sustained yield. . . ." 43 U.S.C. § 1732(a). Multiple use is defined in the Act to mean:

> ". . . the management of public lands and their various resource values so that they are utilized in the combination that will best meet present future needs of the American people . . . a combination of balanced and diverse resource uses that takes into account the long term needs of future generations for renewable and nonrenewable resources, including, but not limited to . . . wildlife and fish. . . ."

43 U.S.C. § 1702(c).

The section which most explicitly deals with the power of the Secretary over hunting on federal lands states:

". . . that nothing in this Act shall be construed as authorizing the Secretary concerned to require Federal permits to hunt and fish on public lands or on lands in the National Forest System and adjacent waters or as enlarging or diminishing the responsibility and authority of the States for management of fish and resident wildlife. However, *the Secretary concerned may designate areas of public land and of lands in the National Forest System where . . . no hunting or fishing will be permitted for reasons of public safety, administration*, or compliance with provisions of applicable law." (emphasis added). 43 U.S.C. § 1732(b).

These sections taken together clearly provide the Secretary with the power to halt the wolf hunt. Under 43 U.S.C. § 1732(a), in a subchapter headed "Administration," the Secretary is commanded to manage the public lands under principles of multiple use. Multiple use includes the management of wildlife. 43 U.S.C. § 1702(c). Finally the Secretary may close the lands to hunting for purposes of "administration" which on the face of the statute includes wildlife management.

In the respective rulings on the motions for preliminary injunctions both this court and the District Court for the District of Columbia relied on portions of the legislative history to determine this issue. The portions relied on by each court were diametrically opposed on the definition of the term "administration" and this difference caused the courts to reach opposite results. Upon a review of the statutory scheme, however, this court concludes that the legislation is clear on its face and there is, therefore, no need to resort to the legislative history. It is obvious, therefore, that the court need not determine which portion of the legislative history is to be accorded greater weight.

■ The provision of the Alaska Statehood Act which gives the State the right to control wildlife does not alter this result. The Alaska Statehood Act only created in the State the same authority as that given to other States. *Metlakatla Indians v.*

*Egan*, 369 U.S. 45, 57, 82 S.Ct. 552, 7 L.Ed.2d 562 (1962). Under the Property Clause of the United States Constitution the federal government retains the right to control wildlife management on federal lands. *Kleppe v. New Mexico*, 426 U.S. 529, 535–41, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). By passage of the BLM Organic Act the Congress has implemented the Property Clause on the lands in issue and any State authority to the contrary has been divested by virtue of the Supremacy Clause. *Id.* at 543, 96 S.Ct. 2285. Accordingly, the Secretary had the authority to issue the order prohibiting the hunt.

*NEPA–Environmental Impact Statement*

■ The next issue which must be considered is the necessity for an environmental impact statement pursuant to NEPA before such a hunt may be held. NEPA provides that a Federal agency must provide an environmental impact statement for major actions significantly affecting the quality of human environment. 42 U.S.C. § 4332(C). The District Court for the District of Columbia reached the conclusion that a federal agency which had the power to halt the wolf kill converted a State program into a federal program by acquiescing to the plan. This court does not agree with that analysis and holds that the wolf kill program is not a major federal action triggering NEPA requirements.

■ It is undoubtedly correct that certain decisions by federal agencies which allow others to take action affecting the environment can constitute federal action. *Kleppe v. Sierra Club*, 427 U.S. 390, 399–400, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976); *Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission*, 156 U.S. App.D.C. 395, 481 F.2d 1079, 1088–89 (1973); *NRDC v. Morton*, 388 F.Supp. 829 (D.D.C. 1974), aff'd 527 F.2d 1386. The distinguishing feature of each of these cases, however, is that before the non-federal party could act there had to be some affirmative conduct on the part of the federal government. The Supreme Court referred to the nature of the federal action in these terms, ". . .

to issue a lease, approve a mining plan, issue a right-of-way permit, *or take other action to allow* private activity . . .." (Emphasis added). *Kleppe v. Sierra Club, supra,* 427 U.S. at 399, 96 S.Ct. at 2725.

In the present case there exists none of the affirmative action on the part of the federal government which existed in previous cases. Indeed the presumption is turned around and the State is generally allowed to act unless the Secretary takes some affirmative action to halt the activity. This court finds it a strained chain of logic which turns totally non-federal action into federal action just because the Secretary has the power to regulate the activity. Such a holding would appear to require an EIS for every State hunting season on federal lands.[1] Indeed, if an EIS were ever proper it would seem more appropriate when the Secretary chose to close hunting.

The court cannot conclude as is urged by intervenors that the Secretary's acquiescence is an "entitlement of use" which under BLM and CEQ guidelines would require an EIS. From the context of the phrase and definitionally an "entitlement" presumes some thing or some act conferring legal rights on another. As previously stated that concept is totally absent in State hunting on federal lands when the Secretary merely has the authority to halt the hunting. Accordingly, the court concludes that there is no need for an environmental impact statement before the Secretary permits the wolf kill to occur pursuant to the BLM Organic Act.

■ The only other basis upon which an environmental impact statement might be required are sections 17(d)(2) and 17(d)(3) of the Alaska Native Claims Settlement Act. 43 U.S.C. §§ 1616(d)(2) and 1616(d)(3). A substantial portion of the wolf hunt was to occur on "d–2" lands. These are tracts of land which have been withdrawn by the Secretary for possible inclusion in the National Parks, Forest Wildlife Refuge, and Wild and Scenic Rivers Systems, pursuant to the Alaska Native Claims Settlement Act. 43 U.S.C. § 1601 *et seq.* Under that Act the Secretary is to administer d–2 lands under applicable laws and regulations. 43 U.S.C. § 1616(d)(3).

Intervenors contend that as these lands may be included in various closely controlled National land systems that the Secretary must have the authority to halt hunting on the lands pending resolution of their status. The court agrees that the Secretary does have this power but only because the BLM Organic Act is one of the applicable laws under which these lands are administered. 43 U.S.C. § 1616(d)(3). Hence, the requirement of an EIS under the ANCSA section 17(d)(3) is precisely the same as it is under the BLM Organic Act. The ANCSA imposes no independent duty on the Secretary to require licenses or permits to hunt on these lands and cannot be the basis for a determination that there is federal action involved in these hunts. The power of the Secretary on these lands is totally derivative from other acts.

Even if the ANCSA can be construed as authorizing an independent authority to close the wolf hunt, however, there is still no federal action involved. The authority under the ANCSA would be much the same as that under the BLM Organic Act and as previously developed this more acquiescence on the part of the federal government does not create federal action. Hence, there is no requirement of an environmental impact statement for this hunt under the ANCSA.

*Change of Venue*

■ Intervenors have moved to transfer this action to the District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a). Their basic contention is that the interests of justice would be served by having this case heard by the same court which has issued the injunction in the closely related case. To a certain extent this court agrees. The orderly administration

---

1. This court has not addressed the issue of whether this action significantly affects the human environment or otherwise requires an EIS

as it has concluded that this is not federal action. *But see Fund for Animals v. Frizzell,* 174 U.S.App.D.C. 130, 530 F.2d 982 (1975).

of justice would be aided somewhat by having these cases in the same forum. However, as this court stated in its memorandum on the preliminary injunction that forum should be in Alaska.

The State has been seriously affected by the operation of the injunction issued in the Washington, D.C. case. That court, however, refused to transfer the case to Alaska so the State could be joined as a party. In an effort to protect its interest the State instituted this action. Although venue would have been proper in Washington, D.C., this action is essentially local in nature. It involves a problem on Alaska land in which the State has an important interest. The program of wolf hunting is part of an overall regulatory scheme instituted by the State to protect the caribou and end the depletion of a major food source for Alaska Natives. As the State chose to bring this action in Alaska that choice will not be disturbed as the interests of justice would appear to weigh heavily in favor of this forum.

*Propriety of Summary Judgment*

 Intervenors assert forcefully that it would be an abuse of discretion to issue a final judgment herein. The basis of their contention is that the ruling by this court might create a danger of confrontation due to conflicting rulings from this court and the court in Washington, D.C. In this regard intervenors anticipated a ruling by this court that would have held that the Secretary was without the power to halt the wolf hunt. As this court has not so held the judgment creates no possibility of confrontation.[2] As the Secretary has the power to halt the wolf hunt under the BLM Organic Act the State will not be able to now begin the wolf hunt program. It is assumed that as the issues in this action are the same as those in the Washington, D.C. case and the intervenors and defendants herein are the only parties to that action

that the appropriate Washington, D.C. court[3] will give this judgment its proper *res judicata* and collateral estoppel effect. If the injunction in that case is dissolved the Secretary in his discretion may allow the hunt or preclude it. In either event there is no likelihood of confrontation and this court has not disrupted those proceedings through the operation of its equitable power. Cf. *M/V Theresa Ann v. Kreps*, 9th Cir. 1977, 548 F.2d 1382.

It is perhaps unfortunate that by operation of *res judicata* and collateral estoppel that the judgment herein may preclude further action in Washington, D.C. However, the State is entitled to its day in court on these issues and intervention in those proceedings is not its only choice. Indeed, it is only due to the fact that the intervenors requested to be allowed into this action that this judgment may be binding on them in the other case. Therefore, entry of a final judgment is proper.

---

2. The court expresses no view on the propriety of entry of judgment if such a possibility were present.

3. It appears from the record that the Washington, D.C., injunction has been appealed and a motion to dissolve that injunction may be proper in that Court of Appeals.