CHESAPEAKE BAY FOUNDATION, INC. and Citizens Against the Refinery's Effects, Inc., Plaintiffs,

v.

VIRGINIA STATE WATER CONTROL BOARD et al., Defendants.

Civ. A. No. CA77–0376–R.

United Stated District Court, E. D. Virginia, Richmond Division.

June 28, 1978.

Patrick M. McSweeney, Richmond, Va., with Bruce J. Terris, Washington, D. C., Thomas B. Lewis, Staff Atty., Chesapeake Bay Foundation, Annapolis, Md., for plaintiffs.

Norman Olitsky, Portsmouth, Va., Gordon B. Tayloe, Jr., City Atty., Portsmouth, Va., for intervening defendants.

Patrick J. Cafferty, Jr., Dept. of Justice, Washington, D. C., for defendant U. S.

David E. Evans, Asst. Atty. Gen., Richmond, Va., for defendant Va. State Water Control Bd.

Gerald L. Baliles, Richmond, Va., and J. Michael Hines, Washington, D. C., for defendant Hampton Roads Energy Co., Inc.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, Chesapeake Bay Foundation, Inc. and Citizens Against the Refinery's Effects, Inc. seek in this suit to challenge the issuance of a discharge permit by the defendant Virginia State Water Control Board (State Board) to defendant Hampton Roads Energy Company on February 18, 1977, for a proposed petroleum refinery to be located in Portsmouth, Virginia. The permit is a national pollutant discharge elimination system (NPDES) permit and was issued pursuant to a state program structured under the Federal Water Pollution Control Act as amended in 1972, 33 U.S.C. §§ 1251–1376.[1]

This Court, in an order and memorandum filed February 28, 1978, dismissed claims II–IV of the complaint for lack of subject matter jurisdiction. *Chesapeake Bay Foundation, Inc. v. United States,* 445 F.Supp. 1349 (1978). The only claim in the complaint which was not dismissed was that which alleged that neither the State Board nor defendant, Environmental Protection Agency (EPA) had completed an environmental impact study (EIS) prior to the issuance of the permit. The instant issue is one in which the parties have addressed, by way of motions for summary judgment, the question of whether an EIS was required by the National Environmental Policy Act (NEPA). This issue is now ripe for disposition. Plaintiffs have also moved this Court to reconsider its February 28, 1978 order, and that, too, has been addressed by the parties and is ripe for disposition.

The Court will first address the summary judgment motions concerning the EIS requirement in the first claim of the complaint. It is plaintiff's position that the State Board should have prepared an EIS prior to issuing the permit to Hampton Roads or alternatively that the EPA should have prepared such a statement when it failed to object to the State issued permit.

The requirement of preparing an impact statement is governed by the National Environmental Policy Act. NEPA requires that all agencies of the federal government shall,

". . . (c) include in every recommendation or report on proposals for legislation and other *major federal actions* significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action . . ."

42 U.S.C. § 4332.

Under 42 U.S.C. § 4332 an impact statement is required if there is:

(1) an agency of the federal government involved;

(2) a major federal action;

(3) and a significant impact on the environment.

In the instant case there is no dispute that the NPDES permit involved would have a significant impact on the environment. The dispute then is whether there is sufficient involvement of a federal agency and whether any major federal action has been taken with respect to this permit.

▮ Plaintiffs are attacking EPA's failure to act or object to the state permit.

---

1. A detailed summary of the Act and the facts of the instant case may be found in *Chesapeake Bay Foundation, Inc. v. United States,* 445 F.Supp. 1349 (E.D.Va.1978).

The viability of that attack fails because of a lack of major federal action. Indeed, in the instant case, no action was taken by the EPA. An impact statement is not required each time a federal agency fails to take action albeit that failure to act will have some impact on the environment. *See State of Alaska v. Andrus,* 429 F.Supp. 958, 963 (D.Alaska 1977). In *Molokai Homesteaders Cooperative Assoc. v. Morton,* 506 F.2d 572 (9th Cir. 1974), the Court held that the determination of the federal government not to object, "cannot realistically be classified as 'Federal action' much less 'major' Federal action" under EPA. *Id.* at 580. Moreover, the Federal Water Pollution Control Act gives the EPA unreviewable discretion concerning whether or not to object to a state issue.[2] Despite the fact that EPA took no action with regard to the permit in the instant case, it is plaintiff's position that an impact statement is required pursuant to 33 U.S.C. § 1371, of the Federal Water Pollution Control Act. Section 1371 reads as follows:

> (c)(1) *except* for the provision of Federal financial assistance for the purpose of assisting the construction of publicly owned treatment works as authorized by § 1281 of this title, and the issuance of a permit under § 1342 of this Title for the discharge of any pollutant by a new source as defined in § 1316 of this title, *no action of the administrator taken pursuant to this chapter shall be deemed a major federal action significantly affecting the quality of the human environment within the meaning of the National Environmental Policy Act of 1969 . . .* [emphasis added].

Failure of the EPA to object to a state issued permit cannot be equated with the issuance of a permit by the administrator. *See State of Washington v. EPA,* 573 F.2d 583 (9th Cir. 1978), *Mianus River Preserva-* *tion Committee v. EPA,* 541 F.2d 899 (2d Cir. 1976) and *Save the Bay, Inc. v. EPA,* 556 F.2d 1282 (5th Cir. 1977). Concluding that the EPA was not required to prepare an environmental impact statement in the instant case under either NEPA or the FWPCA, plaintiff's contentions in this regard must fail.

Plaintiff's parallel contention is that the State Board was required to issue an impact statement prior to its issuance of an NPDES permit granted to Hampton Roads Energy Company. They concede the NEPA only applies to federal agencies, but contend that there was sufficient federal involvement in the instant case to make the action of the State Board a major federal action for purposes of NEPA. Indeed, if plaintiffs can establish that there was federal action then, of course, an impact statement would be required of the State Board under NEPA. Plaintiffs contends that this has been established and advance two theories in support of that contention. First, it is claimed that EPA delegated its authority to the State Board under the Federal Water Pollution Control Act. Secondly, plaintiffs rely upon the resurrection of the Refuse Act.

In essence, plaintiffs' claim is that EPA supervision over the state NPDES permit program and the federal regulation pertinent thereto is so pervasive that actions which are normally considered state actions are transformed into federal actions under NEPA. Indeed, plaintiffs have cited a number of cases, involving federal-state joint ventures, where courts have found that the federal involvement is of such a degree and nature that federal authority had been delegated to state agencies.[3] These cases, however, generally held that due to the federal federal nature of the state agency's action, an impact statement

---

**2.** *Id.* at § 1353.

**3.** Defendants placed their reliance on: *Burton v. Wilmington Park Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Scottsdale Mall v. Indiana,* 549 F.2d 484 (7th Cir. 1977); *Friends of the Earth, Inc. v. Coleman,* 518 F.2d 323 (9th Cir. 1975); *Ely v. Velde,* 497 F.2d 252 (4th Cir. 1974); *Scientists' Institute for Public Information, Inc. v. AEC,* 156 U.S.App.D.C. 395, 481 F.2d 1079 (1973); *Defenders of Wild Life v. Andrus,* 428 F.Supp. 167 (D.D.C.1977); *No East-West Highway Committee, Inc. v. Whitaker,* 403 F.Supp. 260 (D.N.H.1975).

was required by NEPA. This Court concurs in the view that in some instances federal involvement is so pervasive that the acts of the state are in reality federal actions. Whether an impact statement is required in those cases involving federal-state partnerships or joint ventures depends upon the nature and the degree of federal involvement as well as the federal statute which may be involved. In the instant case, however, the state issuance of NPDES permits does not in the Court's view constitute an act which is federal in nature, hence an impact statement was not required by the State Board.

 The Federal Water Pollution Control Act as amended in 1972, initially gave EPA the authority to issue NPDES permits. It was, however, contemplated by Congress that these permits were ultimately to be issued by the states according to approved state programs. 33 U.S.C. § 1342(b). Defendants' reliance on the large number of federal regulations which must be complied with reference a state NPDES program is misplaced. The fact that an area is subject to heavy federal regulation does not transform state actions in that area to federal actions for purposes of NEPA. EPA's main function in regard to a state NPDES program is the initial approval of the state program. EPA approval of the state program is reviewable directly in the Court of Appeals. 33 U.S.C. § 1369(b)(1). The fact that the state program, once approved, is subject to federal requirements is of no consequence for the purposes of NEPA. Congress could not have intended that all the permits which have been, and are to be, be issued under 33 U.S.C. § 1342(b) by the states would have to be preceded by an impact statement. As this Court has previously held, these state NPDES permits are basically state matters[4], which are merely subject to minimum federal requirements. The congressional intent regarding the Federal Water Pollution Control Act is of course relevant in determining whether

state agencies must prepare Environmental Impact Statements. The NPDES state permit program is unique to the FWPCA. A recent conference report stated:

> The conferees wish to emphasize that such a state program is one which is established under state law and which functions in lieu of the federal program. It is not a delegation of federal authority. This is a point which has been widely misunderstood with regard to the permit program under § 402 of the Act. That section, after which the conference substitute concerning state programs for the discharge of dredged or fill material as model, also provides that state programs which function in lieu of the federal program and does not involve a delegation of federal authority.[5]

The only case involving the Federal Water Pollution Control Act which in the Court's view even tangentially addressed this issue is *Mahelona v. Hawaiian Electric Power Co.*, 418 F.Supp. 1328 (D.Hawaii 1976). In that case, the Court, after stating that the question of whether the issuance of an NPDES permit would constitute a major federal action was not present in that case, stated in a footnote, "in view of the significant role played by EPA in the state's administration of its own NPDES program . . . it appears likely that an EIS would be required of at least one responsible agency even when the state issues an NPDES permit in the first instance." *Id.* at 1328–33, fn. 6. For the reasons previously stated, this Court disagrees with the dicta of *Mahelona* and holds that the issuance of an NPDES permit by the state, in the circumstances which exist here, does not constitute a major federal action.

The instant case is also distinguishable from *Scottsdale Mall v. Indiana*, 549 F.2d 484 (7th Cir. 1977) and *No East-West Highway Comm., Inc. v. Whitaker*, 403 F.Supp. 260 (D.N.H.1975), cases which plaintiffs have offered in support of their position.

---

**4.** *See Chesapeake Bay Foundation, Inc. v. United States*, 445 F.Supp. 1349, 1353 (E.D.Va. 1978).

**5.** H.R.Rep.No.95–830, 95th Cong. 1st Sess. 3 (1977) reprinted in U.S.Code Cong. & Admin. News, pp. 4424, 4479 (1977).

Those cases involve federal funding and highway construction. The key question is whether there is sufficient federal involvement to make the state action a major federal one. Plaintiffs rely almost exclusively on the fact that state permit programs are heavily regulated and therefore under federal supervision. In light of the structure of legislative history of the Federal Water Pollution Control Act, the Court concludes that this fact alone is insufficient to require the state to prepare in Environmental Impact Statement.

Plaintiffs also contend that the state in issuing NPDES permits is exercising federal authority under the Refuse Act, 33 U.S.C. § 407. It is their position that prior to the Federal Water Pollution Control Act amendments of 1972, the Refuse Act required the preparation of an impact statement in order to secure a discharge permit. *Kalur v. Resor,* 335 F.Supp. 1 (D.D.C.1971). Plaintiffs' position simply stated is that state NPDES permits are issued pursuant to the Federal Water Pollution Control Act *and* the Refuse Act. This position is premised on the fact that the Refuse Act has not been repealed. They argue that an impact statement is therefore still required pursuant to that Act for any discharge permit. Plaintiffs' contention, in the Court's view, is not well taken. The Refuse Act was specifically superseded by the NPDES program as shown by the language of the Federal Water Pollution Control Act.[6]

It follows therefore that plaintiffs' motion for summary judgment must be denied and defendants' motion for summary judgment reference the Environmental Impact Statement claim must be granted.

This conclusion, however, does not end the matter since the plaintiffs have moved the Court to reconsider certain aspects of its order of February 28, 1978 granting defendants' and intervenors' motions to dismiss for lack of subject matter jurisdiction over claims II, III and IV of plaintiffs' complaint. Plaintiffs seek only reconsideration of that part of the February 28, 1978 order dealing with the dismissal of claims II–IV reference the State Board. It should be noted that the Court's conclusion that the Environmental Protection Agency has unreviewable discretion in deciding whether to object to a state permit is not part of the Court's reconsideration.

■ The Court having reviewed its prior conclusions and having had the benefit of further argument by the parties, concludes that it indeed does have jurisdiction over claims II–IV of the complaint. The claim in the instant case is that the state issued NPDES permit violated the Federal Water Pollution Control Act and plaintiffs are correct in their contention that this Court does have subject matter jurisdiction over the state issuance of an NPDES permit which allegedly violates the Federal Pollution Control Act. It is part of the federal court's responsibility to interpret federal statutes. The Court, however, reaffirms its holding that the state NPDES program is basically a state matter and recognizes that the Federal Water Pollution Control Act does provide minimum federal guarantees for NPDES permits. The fact that the state issued the permit is not significant as long as there exists a substantial federal question which does indeed present itself when, as in the instant case, the state permit is alleged to be violative of the minimum guarantees as set forth in the Federal Water Pollution Control Act. The Court concludes therefore that there is concurrent jurisdiction in federal and state courts over state issued NPDES permits. While this indeed might lead to trifurcated review in some cases,[7] it is the congressional mandate which binds this Court.

---

6. *See* 33 U.S.C. § 1342(a)(5).

7. The United States Court of Appeals for the Fourth Circuit has characterized the Act as "poorly drafted and astonishingly imprecise". *E. I. DuPont de Nemours & Co. v. Train,* 541 F.2d 1018, 1026 (4th Cir. 1976), *aff'd. in part*

*rev'd. in part,* 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977). *See also,* 33 U.S.C. 1369(b)(1) granting the Court of Appeal's direct review of certain issues under the Federal Water Pollution Control Act.

The state court, however, has already tried the issue and rendered a detailed opinion under date of May 2, 1978. *See Virginia Oyster Packers and Planters Assoc. v. State Water Control Board,* (No. A–609) (Cir. C. City of Richmond, Div. I).

It follows therefore that the Court must vacate that portion of its prior order which held that it did not have jurisdiction over claims II–IV of the complaint, and will ask the parties to address themselves to the effect of the state court judgment in the instant case.

An appropriate order will issue.