**CITIZENS FOR A BETTER ST. CLAIR COUNTY et al., Plaintiffs-Appellants,**

**v.**

**Fob JAMES, Governor of Alabama et al., Defendants-Appellees.**

No. 80–7223.

United States Court of Appeals, Fifth Circuit.
Unit B

June 15, 1981.

Before JONES, TJOFLAT and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

Appellants are residents of St. Clair County, Alabama, who oppose the construction of a state prison in their neighborhood. They brought this action in the district court to enjoin the State's acquisition of the prison site, and the Alabama Water Improvement Commission's issuance of a national pollutant discharge elimination system (NPDES) permit for the proposed prison without preparing environmental impact statements as required by the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4331 *et seq.* (1976).[1] The district court entered summary judgment for the defendants, holding that the State's acquisition of the proposed prison site and the Commission's proceedings with respect to the NPDES permit did not constitute federal action and thus did not necessitate an environmental impact statement. We affirm.

I

To better understand this case it is important to consider why Alabama is seeking to locate a prison in St. Clair County. In 1972, a class of prisoners incarcerated in Alabama commenced a lawsuit against the State. The prisoners alleged that their confinement in the antiquated and overcrowded Alabama prison system subjected them to unconstitutionally cruel punishment. The district court for the Middle District of Alabama agreed, *Pugh v. Locke*, 406 F.Supp. 318 (M.D.Ala.1976), aff'd sub nom. *Newman v. Alabama*, 559 F.2d 283 (5th Cir. 1977), cert. denied, 438 U.S. 915, 98 S.Ct. 3144 (1978), and ultimately placed the prison system, then operated by an independent board, into receivership under the Governor

Baxley, Stuart, Ward & Dillard, Wm. J. Baxley, William K. Davenport, Birmingham, Ala., for plaintiffs-appellants.

J. R. Brooks, U. S. Atty., Henry I. Frohsin, Asst. U. S. Atty., Birmingham, Ala., Gail Osherenko, Dirk D. Snel, Attys., Sanford Sagalkin, Acting Asst. Atty. Gen., Justice Dept., Washington, D. C., for federal defendants.

M. Roland Nachman, Jr., Montgomery, Ala., Michael Waters, Birmingham, Ala., for James.

William O. Butler, III, R. Craig Kneisel, Spec. Asst. Atty. Gen., Montgomery, Ala., for Ala. Water Improvement Commission.

---

1. NEPA requires federal agencies to prepare an environmental impact statement on "major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(C) (1976).

of Alabama, *Newman v. Alabama*, 466 F.Supp. 628 (M.D.Ala.1979). The district court, in its order creating the receivership, required the State to take certain measures to alleviate the overcrowded conditions.

The State sought suitable locations for new correctional facilities and decided to construct a prison in St. Clair County. As a preliminary step to the acquisition of the St. Clair County site, the Alabama Department of Corrections asked the Alabama Water Improvement Commission about the conditions under which the proposed prison might discharge treated wastes into Little Canoe Creek. The Commission is the agency charged with controlling water pollution in Alabama. *See* Alabama Water Pollution Control Act, *Ala.Code* §§ 22–22–1 *et seq.* (Supp.1980). The record does not inform us of the Commission's response, if any, to the Department's inquiry.

The Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (1976), prohibits discharge of pollutants into navigable waters of the United States unless the discharger has obtained a NPDES permit. *Id.* at § 1342. Congress has empowered the Administrator of the Environmental Protection Agency (EPA) to issue NPDES permits or to "authorize a State, which he determines has the capability of administering a permit program ..., to issue [such] permits." *Id.* at § 1342(5). In 1979, the Administrator authorized Alabama, through its Water Improvement Commission, to issue NPDES permits. Although the Alabama Department of Corrections inquired of the Commission about the propriety of discharging wastes into Little Canoe Creek, the Department has not yet applied for a NPDES permit.

One further historical fact is pertinent in our examination of appellants' claims: the Federal Law Enforcement Assistance Administration Agency (LEAA) has provided Alabama with funding for its corrections program, but none of this funding has been earmarked for use in acquiring new prison facilities.

The announcement that the State planned to build a prison in St. Clair County evoked vigorous opposition from the local residents. To give a unified voice to their opposition, these residents formed Citizens for a Better St. Clair County. This citizens' group organized a letter-writing campaign to persuade state officials to change their plans, attempted to have the proposed site condemned for use as a park, and eventually sued in state court to enjoin the State's acquisition of the site. When these steps failed, the citizens' group, and several of its members, brought this action for injunctive relief.[2]

The defendants moved for dismissal because, in their view, neither the prison acquisition nor the actions of the Alabama Water Improvement Commission were major federal actions. Two of the defendants, Robert G. Britton and James Warr, directors of the State Department of Corrections and the Commission, filed affidavits with the court. Because these affidavits are critical to the resolution of this appeal, we quote from them at some length. Britton's stated:

The State of Alabama is presently attempting to obtain a site in St. Clair County for a prison (hereafter "Site"). The decision to build a prison and to obtain this Site was made entirely by state government officials without federal involvement or direction. Once this Site is obtained, plans will then be prepared for construction of the facility. There will be no federal permits required prior either to obtaining the Site or building the facility.

The acquisition of the Site and the construction of the prison facilities will be paid for out of funds of the State of Alabama ... There will be no federal money used either to obtain the Site or build the facilities. Once completed, the

2. Named as defendants in the suit were the Governor of Alabama; the Alabama Department of Corrections and its Director, Robert E. Britton; the Law Enforcement Assistance Administration; the Alabama Water Improvement Commission and its Director, James Warr; and the Environmental Protection Agency and its Administrator, Douglas I. Costle.

prison will be operated exclusively by Alabama state officers and employees without federal control or responsibility.

No federal monies received by any agency of the State of Alabama can or will be used to finance the purchase of a prison Site or for the construction of any prison facility.

Record at 32–33. Warr stated that:

To date, neither the [Alabama] Department of Corrections nor anyone representing them has filed an application for an NPDES permit with the [Alabama Water Improvement Commission] which is in conformance with the premit regulations of the ... Commission. Consequently, the Commission at present has no official application upon which to act. To date, the only correspondence between the [Commission] and the Departmen of Corrections regarding the proposed prison project has related to a preliminary inquiry by the Department as to the feasibility of discharging treated wastes and the conditions under which treated wastes might be discharged into Little Canoe Creek in St. Clair County.

Record at 44.

Plaintiffs did not submit opposing affidavits, but asked the court to defer consideration of the motions for dismissal until the defendants responded to plaintiffs' requests for production of documents. These requests were designed to elicit information concerning the cost of the proposed prison, the State's corrections budget and the amount funded by LEAA, and the degree of cooperation and communication between the EPA and the Alabama Water Improvement Commission.

The district court treated the motions for dismissal as motions for summary judgment, *see F.R.Civ.P.* 12(b)(6), and before the plaintiffs obtained discovery, entered summary judgment for the defendants. The court held that the proposed site acquisition and the Commission's entertainment of the Department of Correction's inquiry about waste disposal were not federal actions; consequently, environmental impact statements were not required.

We have two questions before us on appeal. First, can it be inferred from the record that Alabama's preliminary steps to obtain the prison site and a NPDES permit constitute major federal action requiring the preparation of an environmental impact statement? Second, if major federal action cannot be so inferred did the district court abuse its discretion in curtailing discovery that appellants contend would have led to evidence to raise such an inference?

## II

As recounted in the facts, plaintiffs' complaint alleges that Alabama's planned acquisition of a prison site in St. Clair County constitutes major federal action that will significantly affect the quality of the human environment. If the allegation is true, NEPA requires the responsible federal agency to prepare an environmental impact statement, 42 U.S.C. § 4332(C) (1976), and the acquisition may be enjoined until the statement is submitted.

The defendants conceded that they did not prepare a statement but argued that the planned acquisition was not a federal action. Britton's affidavit set forth the factual basis for defendants' position. In sum, it stated that the federal government would not directly fund or otherwise participate in the acquisition, construction or operation of the prison facility. The plaintiffs presented nothing to the district court to controvert this.

The appellants now urge us to hold that the planned prison site acquisition amounts to federal action notwithstanding the absence of direct federal funding. They advance two reasons why this is so. First, the federal government, through LEAA and possibly other federal agencies, has made grants that support the Alabama corrections program. These grants purportedly released state funds, under the Department of Correction's control, for use in the prison site acquisition. Second, the district court in *Pugh* required Alabama to alleviate overcrowding in its prisons and, in *Newman*, to construct new prisons to accomplish this

goal. Appellants contend that since the state initiated the prison site acquisition in response to this federal judicial mandate, the acquisition constitutes major federal action. We reject both contentions.

■ We first consider appellants' argument that federal funding of the Alabama Department of Corrections federalized the State's decision to acquire a prison site. We have previously observed that "in some circumstances, perhaps, the federal character of a state or local project can be established merely by the presence of substantial federal assistance." *Atlanta Coalition on the Transportation Crisis, Inc. v. Atlanta Regional Commission*, 599 F.2d 1333, 1347 (5th Cir. 1979). In such cases, however, the federal assistance must at least be directed for specific use in the particular project in issue. Britton's affidavit established that the federal government provided no direct funding for the prison facility and that Alabama had requested none.

Appellants contend that *Ely v. Velde*, 497 F.2d 252 (4th Cir. 1974), establishes that indirect federal funding of a prison site acquisition subjects the acquisition to NEPA requirements. Appellants unfairly characterize the holding of the case. There, the State of Virginia received a federal grant to acquire a prison facility. When a group of individuals sued to require state officials to prepare an environmental impact statement, Virginia represented to the court that it had declined the grant. In fact, however, the State had retained the grant money and had made bookkeeping adjustments so that it appeared that the grant money was being used for other projects. Presumably, the state funds earmarked for use in those projects were shifted to the prison acquisition. The Fourth Circuit held that in this situation the federal government was providing direct funding for the prison acquisition.

In the case before us, however, Alabama has not received a grant to assist it in acquiring a prison site. Thus, this case is similar to *Centralia Prison Opposition Group v. Department of Justice*, 12 E.R.C. 1447 (S.D.Ill.1978). There, the court held that state construction of a prison is not federal action despite "significant federal funding in the state prison system as a whole and [the inevitability] that . . . federal funds will be involved in the operation of certain projects at the prison site." *Id.* at 1448. We agree with this holding. Given the extent of federal assistance to the states today, the contrary holding—that substantial federal grants to a state can convert state projects receiving no direct grants into federal actions—could federalize almost every state action. We are directed to nothing in NEPA or its legislative history that supports appellants' novel view and its far-reaching consequences.

■ Appellants argue that the district court orders in *Pugh* and *Newman*, requiring Alabama's new prisons to conform to constitutionally-based standards, are major Federal actions covered by NEPA. The short answer to this argument is that NEPA applies to major actions of the executive department of the federal government, not to the federal judicial branch. *See United States v. Kaiser Aetna*, 408 F.Supp. 42, 55 n.36 (D.Haw.1976), *reversed on other grounds*, 584 F.2d 378 (9th Cir. 1978), *reversed*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). The district court's remedy in *Pugh* and *Newman* did not, therefore, subject Alabama to NEPA.

### III

Appellants contend that the district court should have enjoined the Alabama Water Improvement Commission from entertaining an application for, or issuing, a NPDES permit to the Alabama Department of Corrections for the proposed prison without preparing an environmental impact statement. Appellees counter that the Commission's action in issuing NPDES permits is not major federal action and that an impact statement is thus not necessary. *See generally District of Columbia v. Schramm*, 631 F.2d 854, 862 (D.C. Cir. 1980); *Chesapeake Bay Foundation v. Virginia State Water Control Board*, 453 F.Supp. 122 (E.D.Va. 1978).

■ We need not reach the substantive issue of whether an environmental impact statement must be prepared before a state agency may issue a NPDES permit.[3] At the time the district court entered judgment, the Alabama Department of Corrections had not yet applied for a NPDES permit for the proposed prison facility; it had only inquired preliminarily about the feasibility of discharging treated wastes into the Little Canoe Creek. The issue we must decide is whether the Commission's response to this inquiry, which we will assume to be favorable for purposes of this appeal, obligated the Commission to prepare an environmental impact statement. We think it did not.

The NEPA term "major federal action" has two components: the action must be a federal action, and it must be major action. We first consider whether the Commission's assumed favorable response to the Department of Corrections' inquiry was a federal action.

Neither the Federal Water Pollution Control Act nor, to our knowledge, any federal regulation, dictated the Alabama Water Improvement Commission's response to the Department's inquiry; the federal government had no interest in the Commission's treatment of that inquiry. The Commission's response was not a grant of a permit. Similarly, an unfavorable response would not have been a rejection. Under applicable Alabama regulations, an application for a permit still would have to be made and approved before a NPDES permit could issue. At most, the Commission's favorable response would reflect its preliminary, and tentative, view of the possibility of granting a permit *if* a formal application were subsequently made. Since the Department of Corrections' inquiry about a NPDES permit was not an application for a permit, and since the EPA had no legitimate interest in the Commission's entertainment of the inquiry, any response thereto plainly was not a federal action. A state action that simply suggests the possibility of future federal action is not tantamount to federal action. *See Boston v. Volpe*, 464 F.2d 254, 259 (1st Cir. 1972).

Even were we of the view that any state conduct relating to a NPDES permit, informal or formal, is federal action, we would not require preparation of an environmental impact statement in a case such as this one, when a state merely responds to an inquiry concerning the feasibility of discharging effluent into a navigable body of water. NEPA requires an impact statement only in cases of *major* federal action. To expand NEPA's reach to encompass the situation here would be to require the expenditure of substantial time and resources to prepare an impact statement before a decision to apply for a NPDES permit is made. Congress could not have intended such a result and, in the absence of a clear Congressional mandate, we are not prepared to reach it. We therefore hold that the Alabama Water Improvement Commission was not required to prepare an environmental impact statement before responding to the Department of Corrections' inquiry about discharging treated wastes into Little Canoe Creek.

### IV

■ The appellants had various requests for the production of documents pending when the district court entered its order granting summary judgment. They contend that it was error for the court to consider the merits of the case before they completed their discovery. While it may be error in some cases for a court to rule on a motion for summary judgment while discovery is still underway, it is not error in every case. A trial judge has great discretion in determining whether to grant discovery requests. *Pettway v. American Cast*

---

**3.** The only court to determine this issue held that an environmental impact statement did not have to be prepared before a state agency may issue an NPDES permit. *Chesapeake Bay Foundation v. Virginia State Water Control Board,* 453 F.Supp. at 125–127; *see also Dis-* *trict of Columbia v. Schramm,* 631 F.2d at 1862 (EPA's decision not to veto a state's issuance of a NPDES permit does not require preparation of an environmental impact statement). *But see Mahelona v. Hawaii Electric Power Co.,* 418 F.Supp. 1328, 1332–34, n.6 (D.Hawaii 1976).

*Iron Pipe Co.*, 576 F.2d 1157, 1218 n.76 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). The question here is whether the documents the defense was called upon to produce would have contained evidence or would have led to the discovery of evidence raising material questions of fact.

In appellants' view, discovery would have shown that material issues of fact existed on two issues. First, a question would have been presented concerning whether the Alabama Water Improvement Commission and the EPA had entered into a partnership to issue NPDES permits. Appellees contend that no factual matters related to this claim are disputed and that this is a question of law; thus, the court's denial of discovery is irrelevant. We need not decide the nature of the Commission's relationship with the EPA, however. As our earlier discussion has indicated, the proper issue for resolution was whether the Commission's response to the Department of Corrections' inquiry about discharging treated waste was a major federal action. This question plainly is one of law, and discovery was unnecessary to its resolution.

Second, appellants believe their discovery might have shown that Alabama was receiving federal support for the acquisition of the proposed prison site in St. Clair County. We have already held that indirect federal support is insufficient to federalize the acquisition; Britton's affidavit established that Alabama would not receive direct federal funding for the prison acquisition. Thus, appellants, to create a fact issue, must show that Britton's affidavit was incorrect or incomplete. Appellants did not argue to the district court that Britton's statement was incorrect; nor did they suggest that the documents to be produced would impeach his statement. Consequently, the district court was within its discretion in acting on the merits of the case before discovery was completed.

The judgment of the district court is AFFIRMED.